# IN THE SUPREME COURT

# STATE OF NORTH DAKOTA

2018 ND 263

Scott A. Dahms & Shannon K. Dahms,　　　　　　　　Plaintiffs and Appellants

　　　v.

Nodak Mutual Insurance Company
and Mike Bruckbauer,　　　　　　　　　　　　　　Defendants and Appellees

No. 20180202

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven E. McCullough, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Jonathan T. Garaas, Fargo, ND, for plaintiffs and appellants.

Kraig A. Wilson, Grand Forks, ND, for defendant and appellee Nodak Mutual Insurance Company.

Lisa M. L. Bachman (argued), and Jason T. Mohr (on brief), Minneapolis, MN, for defendant and appellee Mike Bruckbauer.

# Dahms v. Nodak Mutual Insurance Co.

## No. 20180202

**VandeWalle, Chief Justice.**

[¶1]    Scott and Shannon Dahms appealed from a summary judgment dismissing their action against Nodak Mutual Insurance Company to obtain additional insurance payments, and against their insurance agent, Mike Bruckbauer, for damages resulting from his alleged violation of professional duties owed to them.  Because the district court correctly interpreted the insurance policy as applied to the undisputed facts, and because the Dahms failed to raise a genuine issue of fact to support their professional negligence claim, we affirm.

I

[¶2]    In 2008 the Dahms purchased a Nodak homeowners insurance policy through Bruckbauer, an independent insurance agent, and the policy was renewed annually. At the time, the Dahms' Fargo property consisted of a two-story residence and a detached two-story carriage house which was used as a garage.  After purchasing the insurance policy, the Dahms constructed a deck between their dwelling house and the garage.  The "fairly elaborate deck" was attached to the garage and lag-bolted to the house.  The Dahms did not inform Bruckbauer about the addition of the deck.  In April 2013, the garage was destroyed by fire and the estimated damage exceeded $87,003.40.

[¶3]    The property coverage provision of the insurance policy provided:

    A.    Coverage A – Dwelling
        1.    We cover:
            a.    The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
            b.    Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

1

2. We do not cover land, including land on which the dwelling is located.

B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

The limit of insurance for Coverage A was $348,907, and the limit of insurance for Coverage B was $34,891.

[¶4] After Nodak determined Coverage B applied and paid the Dahms $34,891, the Dahms brought this lawsuit against Nodak claiming Coverage A applied because the garage was attached to their dwelling by the deck. They also sued Bruckbauer for professional negligence, claiming he violated his duties to protect them from any gaps in coverage and to advise them about their proper insurance needs. The district court granted summary judgment dismissing the action. The court concluded as a matter of law Coverage B applied:

> The Court finds that the garage was not an attached structure as stated in the policy. Coverage A provides a higher insurance total for the dwelling and "structures attached to the dwelling." Coverage B provides a lower insurance limit for "other structures on the 'residence premises' set apart by clear space." This "*includes structures connected to the dwelling only by a fence, utility line, or similar connection.*" The Court finds that this language is clear on its face. Coverage A provides insurance for the dwelling and structures immediately attached to the dwelling; while Coverage B provides insurance for other structures on the premises, including those connected to the dwelling by another structure. Here, while bolts connected the dwelling to the deck, and the deck to the garage, the garage was not otherwise attached to the dwelling. The garage and the dwelling share no walls, roofs, foundations, or entryways. The clear space between the dwelling and the garage is the deck. To find that the construction of a deck could render the garage attached to the home under Coverage A would be to effectively render Coverage B irrelevant, as any structure on the entire premises could be connected to the home by way of a deck and, therefore, be insured under Coverage A. The Court must construe the agreement as a whole, and, therefore, must find that the deck in this situation is similar to a fence or utility line which connects the garage to the dwelling, but does not "attach" it.

The court dismissed the negligence claim against Bruckbauer, concluding as a matter of law that he breached no professional duties owed to the Dahms.

## II

[¶5] The Dahms argue the district court erred in dismissing their action on summary judgment.

[¶6] Our standard of review for summary judgments is well established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Pettinger v. Carroll*, 2018 ND 140, ¶ 7, 912 N.W.2d 305 (quoting *A.R. Audit Servs., Inc. v. Tuttle*, 2017 ND 68, ¶ 5, 891 N.W.2d 757).

## A

3

[¶7]   The Dahms argue the district court erred in ruling Coverage A policy limits did not apply because they contend the garage was "attached" to their dwelling by the deck.

[¶8]   In *Borsheim Builders Supply, Inc. v. Manger Ins., Inc.*, 2018 ND 218, ¶ 8, 917 N.W.2d 504, we recently explained the rules for interpreting insurance policies:

> "Insurance policy interpretation is a question of law, which is fully reviewable on appeal." *Forsman[v. Blues, Brews & Bar-B-Ques, Inc.]*, 2017 ND 266, ¶ 10, 903 N.W.2d 524. This Court independently examines and construes the insurance contract on appeal to decide whether coverage exists. *K & L Homes[, Inc. v. Am. Family Mut. Ins. Co.]*, 2013 ND 57, ¶ 8, 829 N.W.2d 724. This Court construes policy language to give effect to the parties' mutual intention at the time of contracting:
>
>> We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.
>
> *Forsman*, at ¶ 10 (quoting *K & L Homes*, at ¶ 8).

[¶9]   Whether Coverage A or Coverage B insurance policy limits apply under the circumstances present in this case is a question of first impression in North Dakota. The parties do not cite, and we have not found, any cases construing similar insurance policy provisions from other jurisdictions that are factually on point. In deciding this issue the district court found persuasive a hypothetical posed by the Texas Supreme Court in *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 260 (Tex. 2017):

> To illustrate using a hypothetical, a stand-alone barn on a residence premises set apart from the dwelling by clear space would clearly be covered under subsection (2). Yet without the second

4

sentence in subsection (2), a barn that was connected to the dwelling by *only a fence* would qualify as a "structure attached to the dwelling." This is because the fence, acting as a "structure attached to the dwelling" and a "connection" to the barn that would otherwise be "set apart by clear space," acts to negate the clear space requirement that places the barn neatly in the first sentence of subsection (2). An insured could simply use some fencing (or a "utility line or similar connection") and attach his or her dwelling to every barn, garage, or other building on the residence premises and secure coverage under subsection (1) instead of subsection (2). What protects the insurer from an insured determined to secure coverage for his or her other structures in such a way? The second sentence of subsection (2) provides the answer, and it does so with the distinction between "dwelling" and "other structures." In the above illustration, applying the second sentence of subsection (2) would cause the barn, connected to the dwelling by only a fence, to *not* be considered "attached to the dwelling" but rather as effectively "separated by clear space." The second sentence of subsection (2) operates to *prevent* a fence (or similar connection) attached to the dwelling from doing exactly what the court of appeals contemplated the Nassars' interpretation would do: cause structures attached to the fence to be covered under subsection (1). Stated differently, the first sentence of subsection (2) identifies what is to be covered, and the second sentence limits that coverage. Applying this interpretation to our hypothetical, the barn would be covered as an "other structure" even though it is connected to the dwelling by a fence.

[¶10] Courts in other jurisdictions construing nearly identical policy language are in accord and have concluded, as did the district court here, that decks and concrete patios connected to a dwelling and other structures constitute "clear space" which do not functionally differ from a lawn or garden, rendering Coverage B limits applicable. The most extended discussion of the issue appears in *Porco v. Lexington Ins. Co.*, 679 F.Supp.2d 432, 434 (S.D.N.Y. 2009), which involved an insured's attempt to claim Coverage A limits applied to damage to a swimming pool connected to the dwelling by a patio, stairs, and a pool deck, none of which was covered by a roof. The pool's filtration system was located in the dwelling and was connected to the pool by pipes. *Id.* The court relied on ordinary dictionary definitions of "attached," meaning "'joined or fastened to something,'" and "connected," meaning "'joined or linked

5

together,'" to resolve the issue. *Id.* at 437. The court determined the language used in Coverage A and Coverage B was not ambiguous and explained:

> The plain language of "attached" renders unpersuasive Plaintiff's claim that the dwelling is connected to the pool via the back patio, the steps, and the pool deck. In essence, Plaintiff asserts that because the house is "connected to" the patio, and the patio is "connected to" the steps, and the steps are "connected to" the pool deck, and the pool deck is "connected to" the pool, by some transitive property, the pool is "attached" to the house and, therefore, Coverage A applies. If the patio is joined or fastened to the dwelling, as it would seem to be, then that might distinguish the patio from a lawn or other obviously clear space separating the house from other structures. However, a dwelling might well be connected to a patio, and the patio to a walkway, and a walkway to a dog house or a mail box, but it would be absurd to conclude that the dog house and mail box are "attached" to the dwelling. Plaintiff's implicit argument that manmade structures that are all connected to each other have a property of being "attached" must, therefore, be limited in some way.
>
> That limitation is found in the language of the Policy as applied to the relationship between the structure at issue and the dwelling. . . . Even granting that the patio and stairs are attached to the dwelling and that the pool deck is attached to the pool, it strains the ordinary use of "attached" to argue that the steps, fence, and elevation do not set the dwelling apart from the pool. Put another, simpler way, the pool is indisputably not joined or fastened to the dwelling, and the fact that the pool deck is between the stairs and the pool, even if they touch each other, does not change the analysis.

*Id.* at 438. The court reasoned that "the pool deck is clear space separating the dwelling (even if defined to include the stairs from the back patio) from the swimming pool" because the "Court is at a loss to understand how cement is any more of a restriction of the space than grass would be." *Id.* at 439. The court granted summary judgment concluding the pool was an "other structure" and Coverage B applied. *Id.* at 441.

[¶11] Two unreported decisions applying the same policy language are in accord. *See Mentesana v. State Farm Fire & Cas. Co.*, No. 07-0456-CV-W-ODS, 2008 WL 2225737, at *3 (W.D. Mo. May 28, 2008) ("Plaintiff's pool and waterfall are separated from his house by clear space. While this clear space is a concrete patio,

6

rather than grass, it still provides separation from the house. Plaintiff's interpretation . . . would allow for any structure to be brought within the 'Dwelling' coverage merely by placing it on a concrete slab and connecting that slab to the foundation of the house."); *Arch v. Nationwide Mut. Fire Ins. Co.*, CIV. A. No. 88-5421, 1988 WL 122408, at *3 (W.D. Pa. Nov. 10, 1988) (unroofed twelve-foot concrete patio between pool and dwelling was clear space because "a patio merely comprises part of one's yard as does any lawn or garden").

[¶12] The Dahms rely on *Lazechko v. Auto Owners Ins. Co.*, No. 276111, 2008 WL 2697428, at *4 (Mich. Ct. App. July 10, 2008), where the court ruled Coverage A limits applied to a garage connected to the dwelling by a breezeway based on a dictionary definition of breezeway as "'an open-sided roofed passageway for connecting two buildings, as a house and a garage.'" *Id.* But the present case does not involve a roofed breezeway, and the insured in *Lazechko* was attempting to invoke Coverage B limits to obtain additional insurance proceeds.

[¶13] We reject the Dahms' argument that the analysis need go no further than an interpretation of Coverage A. We interpret insurance contracts as a whole to give meaning and effect to each clause, and each clause may be used to interpret others. *See Borsheim Builders Supply*, 2018 ND 218, ¶ 8, 917 N.W.2d 504. Coverage A policy limits apply to dwellings and structures attached to the dwelling. Coverage B policy limits apply to other structures separated by clear space. The Dahms' argument that their deck attached to their dwelling and their other structure invokes Coverage A policy limits would render Coverage B policy limits meaningless.

[¶14] We agree with the district court and other courts that have addressed similar policy provisions in analogous circumstances. We conclude as a matter of law that the Dahms' deck constituted "clear space" between the "dwelling" and the "other structure," even though the garage was connected to the dwelling by the deck. The court did not err in granting summary judgment concluding Coverage B policy limits applied and dismissing the Dahms' claim against Nodak.

7

[¶15]   The Dahms argue the district court erred in dismissing their professional negligence claim against Bruckbauer because "[a]gents, or their principals, are liable if coverages do not exist."

[¶16]   In a negligence action, whether a duty exists is generally an initial question of law for the courts.  *See APM, LLLP v. TCI Ins. Agency, Inc.*, 2016 ND 66, ¶ 8, 877 N.W.2d 34.  The district court thoroughly analyzed this claim, recognizing that the standard of care "requires an insurance agent to exercise the skill and care which a reasonably prudent person engaged in the insurance business would use under similar circumstances," and that an agent's duties are ordinarily limited to "act in good faith and follow instructions." *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 577 (N.D. 1990). The court ruled that on the undisputed evidence presented Bruckbauer breached no professional duty because when he sold the policy to the Dahms as requested, there was no deck in existence, and the Dahms never informed him or requested higher coverage when the deck was constructed.  The court further noted that "[a]n affirmative duty to take action not specifically requested by the insured may arise on behalf of an insurance agent if some sort of special circumstances are present." *Id.* at 578.  But the court ruled no special circumstances existed because, although the parties had a "'long-standing relationship,'" the Dahms sought no advice about the garage, did not contact Bruckbauer regularly, and Bruckbauer did not visit their property.  The Dahms do not argue the court misapplied the law and do not point to any evidence to dispute these facts.  Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute as to an essential element of his claim and on which he will bear the burden of proof at trial.  *See Bjerk v. Anderson*, 2018 ND 124, ¶ 9, 911 N.W.2d 343.  The Dahms failed to raise a genuine issue of fact on this claim.

[¶17]   We conclude the district court did not err in dismissing the Dahms' professional negligence claim against Bruckbauer as a matter of law.

## III

[¶18] It is unnecessary to address other arguments raised because they are unnecessary to the decision or are without merit. We deny Bruckbauer's request for an award of costs and attorney fees for a frivolous appeal under N.D.R.App.P. 38. The summary judgment is affirmed.

[¶19]  Gerald W. VandeWalle, C.J.
       Jon J. Jensen
       Lisa Fair McEvers
       Daniel J. Crothers
       Jerod E. Tufte