**Opinion issued October 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00780-CV

———————————

## LIBRADO PENA, JR., Appellant

## V.

## TEXAS FAIR PLAN ASSOCIATION, Appellee

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-02397**

## MEMORANDUM OPINION

This is an appeal from a summary judgment in favor of insurer and appellee

Texas Fair Plan Association ("TFPA"). Appellant and homeowner Librado Pena, Jr.

filed a claim after a fire destroyed a screened room he had built behind his house in

Pasadena. TFPA determined that the loss was covered as an "other structure" based

on its conclusion that the room was not attached to the house. TFPA maintained that coverage for damages to the screened room was limited to the "other structure" policy limit of $15,610. Pena maintained that the room was attached to the house by a foundation and, therefore, his damages should be covered under the policy limit of $156,100 for loss to the dwelling and structures attached to it. Pena also maintained that the replacement cost of the room was approximately four times the lower policy limit. Unsatisfied with the resolution of his insurance claim, Pena sued TFPA for breach of contract and violations of the Insurance Code and the Deceptive Trade Practices Act. TFPA moved for summary judgment, arguing that because the screened room did not share a common wall or roof with the house and there was "clear space" between it and the house, it was an "other structure" under the policy. Pena argued that the screened room was attached to the house by a slab foundation. The trial court found for TFPA, and Pena appealed.

Because we conclude that there are genuine questions of material fact about whether the screened room was attached to the house, we reverse the trial court's summary judgment and remand this case to the trial court for further proceedings.

**Background**

Librado Pena, Jr. owns a house in Pasadena Texas. The house is attached to a garage by a covered breezeway. In 2012, Pena laid a concrete slab foundation in his backyard and built a 20' by 32' room with openings that were covered by screens

2

(the "screened room").[1] After the screened room was built, Pena hired Williams & Associates to draw up plans for expanding the house, and, in 2013, he added a slab foundation between the slab foundations supporting the screened room and the house. The new slab foundation was joined to the other slab foundations by rebar, cement, and utility connections.



**Figure 1:    Diagram of Pena's Property (not to scale)**

---

[1]    Pena refers to this room as the "game room," and TFPA refers to it as the "patio room." We refer to it as the "screened room."

Pena's homeowner's insurance policy in effect from November 26, 2015 to November 26, 2016 provided:

**COVERAGE A (DWELLING)**

We cover:

1.    the dwelling on the **<u>residence premises</u>** shown on the declarations page including structures attached to the dwelling.

2.    other structures on the **<u>residence premises</u>** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. The total limit of liability for other structures is the limit of liability shown on the declarations page or 10% of the Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

In 2016, a fire of unknown origin destroyed the screened room. Pena alleged that the replacement cost of the screened room was $60,000. TFPA concluded that the screened room was an "other structure" under coverage A(2) of the insurance policy and that its liability for the loss of the screened room was limited to $15,610. Pena sued TFPA for breach of contract and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act.

TFPA moved for summary judgment on traditional grounds, arguing that the screened room was "built separate and apart from the main house," and that it was an "other structure" under the policy. TFPA relied on a recorded statement Pena made the day after the fire in which he described the screened room as "detached"

4

and agreed that it was "a separate structure away from the house that's used as a get-together area, a family room." In his deposition, Pena testified that the screened room did not share a wall or roof with the house or garage. He also testified, however, that the screened room "shares a slab" consisting of "electrical, rebar, concrete" with the house. Pena agreed that a photograph showed "space between the [screened] room and the rest of the garage and house structure."

TFPA also relied on the reports and affidavits of Reginald Douglas, an adjustor with Eberl Claims Service who prepared an estimate of costs to repair or replace covered damage, and Bradley L. East, a professional engineer with the CTL Group who inspected the damage. Both Douglas and East averred that the screened room was "freestanding and set apart from by a clear space from the main house." East's report characterized the screened room as "free-standing" and "detached."

In response to TFPA's motion for summary judgment, Pena pointed out that in his deposition testimony, he stated that the screened room "shares a slab" with the house. He also relied on his own affidavit and numerous photographs attached to it. In his affidavit, Pena averred that, at the time of the fire, the screened room "was built on and occupied a part of the foundation of the planned addition that was a part of the foundation [of the] main residence." He also averred that plumbing and electrical lines ran through the foundation and tied into both the screened room and the house.

Exhibit 3 to Pena's affidavit was six photographs of the construction of the slab foundation that joined the screened room foundation on one side and the house foundation on another. These photographs show that a portion of the lot behind Pena's house and surrounding the screened room had been excavated to allow the foundation and utility connections to be set in place. Wood framing, rebar, utility connections, and a sheet of heavy plastic over the top are shown in one photograph, and another photograph shows the area after the cement was poured. The photograph shows the cement abutting the bottom of the screened room and the bottom of the house. Pena argued that the common foundation that was joined to the foundation of the house and the screened room attached the screened room to the house. Therefore, he contended that the screened room was attached to the house, satisfying the language of the policy coverage provision in (A)(1). He also argued that, although the words "similar connection" in coverage provision (A)(2) were undefined, they "connote something long and sinuous with minimal substance 'similar to a fence or utility line.'" He contended, therefore, that the foundation was not similar to a fence or a utility line.

The trial court granted summary judgment, finding that "there is no genuine issue of material fact and the TFPA is entitled to judgment as a matter of law." Pena later nonsuited his other claims, and the trial court signed a final judgment. Pena appealed.

**Analysis**

On appeal, Pena asserts that the trial court erred by granting summary judgment because (a) there are genuine issues of material fact, (b) the screened room was not separated from the main house by clear space, (c) the way that the screened room is joined to the house is not similar to a fence or utility line, and (d) Pena's interpretation of the insurance policy coverage provisions is reasonable.

**I.    A traditional summary judgment may be granted only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.**

The purpose of summary judgment is to eliminate patently unmeritorious claims, not to deprive a litigant of the right to a jury trial. *E.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan*, 555 S.W.3d at 84; *see Maldonado v. Maldonado*, 556 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "A genuine issue of material fact exists if more than a scintilla of

evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

We review a trial court's summary judgment de novo. *Lujan*, 555 S.W.3d at 84. In doing so, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

## II. Insurance policies are construed according to ordinary rules of contract interpretation.

In construing an insurance policy, we follow ordinary rules of contract interpretation and determine the parties' intent as reflected in the terms of the policy itself. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257–58 (Tex. 2017). This requires us to "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Nassar*, 508 S.W.3d at 258 (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). Undefined words and phrases are given "their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at

126). "If we determine that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted." *Nassar*, 508 S.W.3d at 258. However, if "we determine that both interpretations are reasonable, then the policy is ambiguous," and "we must resolve the uncertainty by adopting the construction that most favors the insured."[2] *Id.* Thus, when undefined terms establish a limitation on coverage, and both the insurer and insured proffer reasonable interpretations, we must adopt the insured's interpretation. *Id.*

**III.    Pena's summary judgment evidence raised a genuine question of material fact about whether the screened room was attached to the house or connected by "only a fence, utility line or similar connection."**

**A.    *Nassar v. Liberty Mutual* construed identical policy provisions.**

In *Nassar v. Liberty Mutual Fire Insurance Co.*, 508 S.W.3d 254 (Tex. 2017), the Texas Supreme Court applied the principle that the insured's reasonable interpretation of an insurance policy provision is favored. In *Nassar*, the Supreme Court considered an insurance policy that included language identical to that at issue in this case. *Nassar*, 508 S.W.3d at 255. The Nassars were homeowners who challenged their insurer's determination that a loss to fencing on their property

---

[2]    "A policy is ambiguous if it is genuinely subject to more than one meaning after applying the pertinent rules of contract interpretation." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017).

should be covered under their policy's "other structures" provision as opposed to the "dwelling" provision. *Id.*

The Nassars' property included "barns, outbuilding, and a system of fencing" that spanned "over 4,000 linear feet," and was comprised of multiple types of fencing. *Id.* at 256. The Nassars contended that the fencing was attached to their house. *Id.* The insurer argued that "simply connecting 4,000 feet of fencing to the dwelling by four bolts does not attach the fencing to the dwelling." *Id.* at 257. The parties filed competing motions for summary judgment, and the trial court granted summary judgment in favor of the insurer. *Id.* at 257.

Coverage A of the Nassars' policy provided:

We cover:

1.    the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2.    other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

*Id.* The word "structure" was undefined, *see id.*, and the Supreme Court looked to definitions of both "structure" and "attach" to inform its understanding of these provisions. *Id.* at 258. "*Black's Law Dictionary* defines 'structure' as '[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together'. . . It further defines 'attach' as '[t]o annex, bind, or

fasten.'" *Id.* (quoting BLACK'S LAW DICTIONARY (10th ed. 2014) (*Structure*; *Attach*)). The Supreme Court concluded that the fencing itself was a structure because it was artificially constructed and composed of parts purposefully joined together, and that it was attached to the dwelling "either by being cemented to the brick and slab of the house . . . or by 'four bolts.'" *Id.*

The Supreme Court also examined the interplay between the (A)(1) and (A)(2) coverage provisions. *Id.* at 260. Coverage (A)(2) applies to structures set apart from the dwelling by clear space. The Court explained that any connection or attachment to a structure could "negate the clear space requirement," in the absence of the second sentence of (A)(2). *See id.* The Supreme Court postulated that "a stand-alone barn on a residence premises set apart from the dwelling by clear space would clearly be covered under subsection (2)." *Id.* However, without the second sentence in subsection (2), a barn that was connected to the dwelling by *only a fence*" would be a structure attached to the dwelling by the fence. *Id.* Thus, in the absence of the second sentence in subsection (2), an insured "could simply use some fencing" to attach his dwelling "to every barn, garage, or other building on the residence premises" in order to obtain the more valuable coverage afforded under subsection (1). *Id.*

The Court thus concluded that the second sentence in subsection (2) prevents an insured from extending the dwelling coverage to separate structures by

connecting them only by a fence, utility line, or similar connection. *See id.* The second sentence of (A)(2) "operates to *prevent* a fence (or similar connection) attached to the dwelling from . . . caus[ing] structures attached to the fence to be covered" under (A)(1). *Id.*

In holding that the fence that was bolted or cemented to the Nassars' house was attached to the dwelling as a matter of law, the Supreme Court expressly declined to determine "when a fence attached to a dwelling by another fence would become an 'other structure' under the policy." *Id.* at 261. The Court instead found that this was a question of fact for the factfinder:

> On the undisputed facts in this record, a fact finder could reasonably determine that some of the 4,000 feet of fencing constructed of different materials and spanning six acres in a "network" across the Nassars' property is not part of the "structure attached to the dwelling." For instance, a fact finder may determine that only the fencing of the type originally bolted to the dwelling is covered under subsection (1), whereas the cross fencing, garden fencing, and pens are covered as "other structures" under subsection (2). Just as a fact finder could be asked whether a barn is separated from the dwelling by "clear space," a fact finder could be asked whether a structure—even a fence—is attached to the dwelling by a "fence, utility line or similar connection."

*Id.*

**B.      Pena presented evidence that the foundation poured in 2013 was joined to both the house and the screened room.**

Pena maintains that the screened room was attached to the house by virtue of the foundation poured in 2013. His summary-judgment evidence included engineering plans for the foundation and a future house expansion as well as

12

photographs showing the construction of the foundation. These photographs show that the 2013 foundation was a structure because it was artificially constructed of parts—include wood framing, rebar, and concrete—that were purposefully joined together. *See Nassar*, 508 S.W.3d at 258 (quoting BLACK'S LAW DICTIONARY (10th ed. 2014) (*Structure*)). The photographs also show that the 2013 foundation was attached or bound to the foundation of the house and the screened room by concrete. *See id.* (quoting BLACK'S LAW DICTIONARY (10th ed. 2014) (*Attach*)).

### C. Summary-judgment evidence did not conclusively prove that the screened room was an "other structure."

The question in this case is whether the 2013 foundation was attached to the house and therefore covered for $156,100, or whether it was separated from the house by clear space and connected only by a fence, utility line, or similar connection. Pena argues that the 2013 foundation was an attachment, and therefore the screened room was attached to the house. Pena's summary judgment evidence shows that both the house and the screened room were joined to the 2013 slab foundation by cement, rebar, and utility connections.

TFPA argues that the logic employed by the *Nassar* barn hypothetical controls the outcome here. *See Nassar*, 508 S.W.3d 261. It asserts that the 2013 foundation is essentially a fence that connects the main house to the screened room just as the fence connected the barn to the house in the *Nassar* hypothetical. However, the hypothetical in *Nassar* illustrated the difference between a fence that is itself a

13

structure that could be attached to the house (and covered under (A)(1)) and the effect of that same fence connecting the house to a barn, which would be covered under (A)(2) because it was connected to the house by a "fence." This case would be analogous to the *Nassar* hypothetical only if the 2013 foundation is considered to be a "similar connection" to a fence or a utility line.

TFPA asserts that the foundation is similar to a fence or utility connection, but it does not explain how it is similar to either a fence or a utility connection. TFPA urges that because Pena was using the slab foundation as a patio—a conclusion TFPA reaches based on the presence of chairs and a trampoline on the slab in photographs—it is a connection that is similar to a fence as a matter of law. TFPA argues that the slab foundation was equivalent to a patio and that other courts have held that patios and decks have constituted clear space. However, TFPA relies on cases in which the facts were undisputed. *See Dahms v. Nodak Mut. Ins. Co.*, 920 N.W.2d 293 (N.D. 2018); *Porco v. Lexington Ins. Co.*, 679 F. Supp. 2d 432 (S.D.N.Y. 2009); *Mentesana v. State Farm Fire & Cas. Co.*, No. 07-0456-CV-WODS, 2008 WL 2225737 at *3 (W.D. Mo. May 28, 2008); *Arch v. Nationwide Mut. Fire Ins. Co.*, No. 88-5421, 1988 WL 122408 (E.D. Pa. Nov. 10, 1988).

In *Dahms*, the trial court entered a take-nothing summary judgment in favor of the insurer. 920 N.W.2d at 294. The Dahmses owned a two-story residence and a detached two-story carriage house which was used as a garage. *Id.* After they

14

purchased insurance, they constructed a deck between their house and the garage. *Id.* at 295. The undisputed facts showed that the deck was attached to both the garage and the house. *Id.* When the garage was destroyed by fire, the insurer paid the claim as an "other structure," and the Dahmses sued, arguing that the garage was attached to the house by the deck. *Id.* The trial court granted summary judgment in favor of the insurer, finding that the deck was similar to a fence or utility line "which connects the garage to the dwelling but does not 'attach' it." *Id.* The Supreme Court of North Dakota cited *Nassar* and looked to cases from other jurisdictions in which the insured had claimed that a concrete patio attached a structure to a dwelling. *Id.* at 297–98 (discussing *Porco*, *Mentesana*, and *Arch*). The court focused on the language in these cases that suggested that the concrete patios were used to separate the dwelling from the other structure and were functionally equivalent to a lawn. *See id.* It held that the Dahmses' deck was clear space, as a matter of law, because the deck was a connection like a fence or a utility line. *Id.* at 299.

In *Porco*, a homeowner sued his insurer asserting that damage to his swimming pool should have been covered under the dwelling coverage provision of his insurance policy. 679 F. Supp. 2d at 433. The facts were undisputed: the pool was separated from the dwelling by a patio, steps, and a pool deck. *Id.* at 437. The plaintiff had argued that the house was connected to the patio, which was connected to the steps, which were connected to the pool deck, which was connected to the

15

pool, making the pool connected to the house. *Id.* at 438. Based on the undisputed facts of this configuration, the court concluded that the pool was too far removed from a direct connection to the house to be considered attached to the dwelling. *Id.*

In *Mentesana*, a homeowner sued his insurer asserting that his in-ground swimming pool and adjacent man-made waterfall should be afforded "dwelling" coverage after they were damaged by a hailstorm. 2008 WL 2225737, at *1. The plaintiff argued that the swimming pool and waterfall were attached to the dwelling because they were "surrounded by a six foot tall concrete wall," which rested "upon a poured concrete foundation" that was "permanently affixed to the poured concrete foundation of the house." *Id.* at *2. The undisputed summary-judgment evidence showed that the pool wall "serve[d] the purposes of separating Plaintiff's back yard from surrounding land and providing security and privacy." *Id.* at *3. Because it was serving as a fence, the court concluded that it was "the type of connection contemplated" by the policy to be similar to a fence or a utility line. *Id.*

In *Arch*, another summary-judgment appeal, the parties stipulated to the facts, which were not in dispute. 1988 WL 122408, at *1. The plaintiffs sued their insurer for a determination that damages to their swimming pool, concrete decking, and concrete patio should be covered under the "dwelling" coverage as structures attached to the dwelling. *Id.* The pool was approximately 12 feet from the house with a concrete patio between the house and the pool. *Id.* The court determined that the

"dwelling and pool are indeed separated by the twelve feet of clear space provided by the patio." *Id.* at \*2. Noting that the question presented was a unique issue that should be determined on its own facts, the court opined that a "patio is not akin to a party wall which serves the function of attaching a garage, for example, to a dwelling. Rather a patio merely comprises part of one's yard as does any lawn or garden." *Id.* at \*3. The patio at issue in the case "could have just as easily consisted of such a lawn or garden." *Id.*

The cases TFPA relies on do not support a conclusion that every patio-like structure in the backyard of a house is a connection that is similar to a fence. Instead, each of the cited cases relied on its particular facts and concluded that the structure the insured asserted was an attachment was actually used to separate the dwelling from another structure. *See Dahms*, 920 N.W.2d at 299 (garage separated from dwelling by deck); *Porco*, 679 F. Supp. 2d at 437 (pool separated from dwelling by patio, steps, and pool deck); *Mentesana*, 2008 WL 2225737, at \*3 (pool wall separated pool and waterfall from backyard and provided security and privacy); *Arch*, 1988 WL 122408, at \*2 (patio separated dwelling and pool). Likewise, we must rely on the particular facts present in this case.

The summary-judgment evidence here does not conclusively prove that Pena's screened room was an "other structure" under the language of the policy. The summary-judgment evidence shows that the 2013 foundation is in some ways like

17

an attachment, i.e., cement is used to join the foundations together, and it is in other ways like a connection, i.e., the slab foundation included plumbing and electrical connections between the house and the screened room. Just as a factfinder could be asked whether a fence is attached to a dwelling "only by a fence, utility line or similar connection," *see Nassar*, 508 S.W.3d at 261, a factfinder could be asked whether the screened room was attached to Pena's house or connected "only by a fence, utility line or similar connection." Because there is a genuine question of material fact about whether the screened room is an "other structure" or attached to the dwelling, we hold that the trial court erred by granting summary judgment in favor of TFPA.

## Conclusion

We reverse the judgment of the trial court, and we remand for further proceedings.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Landau.