# IN THE COURT OF APPEALS OF IOWA

No. 20-1041
Filed October 20, 2021

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JOHN CHANDLER KRAUS,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Wittig, Judge.

     John Kraus appeals his conviction of second-degree theft as a habitual offender and the sentence imposed.  **AFFIRMED.**

     Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

     Considered by Bower, C.J., Schumacher, J., and Scott, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**SCOTT, Senior Judge.**

John Kraus appeals his conviction of second-degree theft as a habitual offender and the sentence imposed. He argues the court erred in instructing the jury on an aider and abettor theory of liability, the evidence was insufficient to support the conviction, and the court abused its discretion by imposing a prison sentence.

## I. Background Facts and Proceedings

In January 2018, the Iowa Department of Human Services (DHS) received allegations concerning financial exploitation of eighty-six-year-old M.S. DHS investigator Lisa Foley contacted law enforcement in order to initiate a joint investigation. Foley and an officer went to M.S.'s home and asked her about the financial allegations. Foley testified she observed M.S. to have "defects as far as her cognitive abilities," and M.S. had no recollection of her finances. One of M.S.'s physicians also testified to her cognitive deterioration. The investigators learned through paperwork in M.S.'s home that roughly $21,000 had been removed from her retirement account over the previous three months. M.S. could not recall whether she did or did not effectuate the withdrawals. Other documentation showed various withdrawals from M.S.'s bank account via an ATM totaling $6000, which M.S. could not explain. The investigation revealed funds were being transferred from the retirement account to the bank account and then being withdrawn from there. M.S. reported her daughter, S.S., who was Kraus's girlfriend at the time, came to her home daily and helped care for her. S.S. telephoned M.S. while the investigators were in the home. Foley overheard S.S. advise M.S. "that she didn't have to talk to [them], and that she could do whatever she wanted to do

with her money, and that she didn't have to tell [them] anything." After the phone call, M.S. no longer wanted to speak with the investigators.

Lieutenant Bruce Deutsch of the Dubuque Police Department was assigned to the case, and he obtained and examined M.S.'s financial records. Documentation for M.S.'s retirement account showed, at one point, the account had several hundred thousand dollars in it, but money began to be transferred into M.S.'s savings account. Her bank records early on appeared normal, showing auto-pays and checks being written out for normal expenses. But the records disclosed an uptick in ATM withdrawals beginning in January 2017, starting with about four per month. Beginning in mid-2017, there was an average of nineteen odd withdrawals per month. Deutsch reviewed Kraus's credit report, which disclosed no active bank accounts in his name. S.S.'s bank records showed that the money that was coming out of M.S.'s account was being deposited into S.S.'s account. At the end of his investigation, Deutsch tabulated the amount of money transferred from the retirement account to the savings account and then having been withdrawn to be $140,000. As a result of the withdrawals from the retirement account, M.S. had to pay nearly $50,000 in taxes and penalties.

Deutsch also obtained around forty surveillance photos from transactions occurring at ATMs or inside the bank itself.[1] Those photos showed that S.S. and Kraus were the people making the withdrawals—"sometimes [M.S.] would be with them and sometimes she wouldn't, and sometimes it would be [S.S.] by herself,

---

[1] Because the investigation encompassed such a long period of time and the bank only maintained ninety days of photos, Deutsch was not able to obtain photos before October 2017.

and sometimes it would be Mr. Kraus by himself." M.S. made a withdrawal when she was by herself on only one occasion. Fifteen photos depicted Kraus either by himself or with M.S. withdrawing funds. Of the fifteen photos captured between late October and mid-December, eight showed Kraus making the ATM withdrawal with Kraus in the driver seat of the vehicle and M.S. in the passenger seat, and the remaining seven show Kraus making the withdrawals by himself. The withdrawals involving Kraus during that time period totaled $3140. Bank records also showed checks totaling more than $10,000 were being written on M.S.'s account to S.S., and then S.S. would write checks from her own account to Kraus. Based on the normal withdrawals in M.S.'s financial records, Deutsch concluded she lived a very modest lifestyle. M.S. also reported she does not use the ATM when she goes to the bank and prefers to go to the counter inside.

Kraus was charged by trial information with second-degree theft. The information was later amended to include a habitual-offender enhancement. The matter proceeded to trial. Following the State's case in chief, Kraus moved for judgment of acquittal, arguing the evidence was insufficient to show he took M.S.'s money with an intent to deprive her of it. The court denied the motion, concluding the evidence was sufficient to engender a question for the jury. Kraus later rested without presenting evidence. During the discussion of final jury instructions, the State requested an instruction on an aiding-and-abetting theory of liability. Kraus objected. While conceding there was evidence of the same, he argued it would not support a theft conviction and the instruction would confuse the jury. The court overruled the objection.

Ultimately, the jury found Kraus guilty as charged. Kraus stipulated to his status as a habitual offender. The court sentenced him to an indeterminate term of imprisonment not to exceed fifteen years with a mandatory minimum of three years. Kraus appeals.

## II. Jury Instruction

Kraus argues the court erred in overruling his objection to instructing the jury on aiding and abetting. He asserts it "was not supported by substantial evidence and the instruction created prejudice because it misled the jury and misstated his culpability and permitted the jury to speculate about possible facts not substantially presented at trial."

"Alleged errors in the submission or refusal to submit jury instructions are reviewed for correction of errors at law." *State v. Tipton*, 897 N.W.2d 563, 694 (Iowa 2017) (citing *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016)). "'Errors in jury instructions are presumed prejudicial unless' a lack of prejudice is shown beyond reasonable doubt." *Id.* (quoting *State v. Ambrose*, 861 N.W.2d 550, 554 (Iowa 2015)). "We review jury instructions as a whole to determine whether the jury instructions correctly state the law." *Id.* (citing *State v. Hanes*, 790 N.W.2d 545, 559 (Iowa 2010)).

The aiding and abetting statute provides:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

Iowa Code § 703.1 (2017).  A conviction for aiding and abetting a crime can be sustained upon "substantial evidence the accused assented or led countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission."  *State v. Lilly*, 920 N.W.2d 293, 308 (Iowa 2019).

The aiding and abetting jury instruction provided the following:

> All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.
>
> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed.  Conduct following the crime may be considered only as it may tend to prove the Defendant's earlier participation.  Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting."  Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."
>
> The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilt.
>
> The crime charged requires a specific intent.  Therefore, before you can find the Defendant "aided and abetted" the commission of the crime, the State must prove the Defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the Defendant did not have the specific intent, or knowledge the others had such specific intent, he is not guilty.
>
> If you find the State has proved the Defendant directly committed the crime, or knowingly "aided and abetted" other person(s) in the commission of the crime, then the Defendant is guilty of the crime charged.

Here the evidence would allow a reasonable factfinder to conclude both Kraus and S.S. were involved in ATM transactions that funneled funds out of M.S.'s savings account, which leads to a reasonable inference each was involved in funneling money into the bank account from the retirement to facilitate the former.

A reasonable factfinder could also conclude S.S. wrote checks totaling in the neighborhood of $10,000 to herself and then funneled some of that money to Kraus through her bank account. The total that was funneled from the retirement account and ultimately disappeared was in the neighborhood of $140,000. S.S. worked at Target, and Kraus had no income, at least on paper. So the jury could reasonably conclude that, given such a large amount of money, and participation by both Kraus and S.S., they both actively participated. While we do not consider the degree of S.S.'s guilt in determining whether Kraus aided and abetted, the evidence showed he took part in the scheme. And given the fact that the money was never returned and essentially evaporated into thin air, a rational jury could have found both Kraus and S.S. had a collective intent to deprive M.S. of her funds.

We find the evidence was sufficient to support a jury question on the issue of aiding and abetting, and we affirm on this point.

## III.    Sufficiency of the Evidence

Kraus challenges the sufficiency of the evidence on the issue of whether he had an intent to deprive M.S. of her money. Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law. *State v. Albright*, 925 N.W.2d 144, 152 (Iowa 2019). The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)).

"Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational [factfinder] that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the [factfinder]." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

As the State points out, Kraus had no demonstrable income or bank account. M.S. had little to no ability to manage finances, lived a modest lifestyle and had no need for the money that was being withdrawn from her account, and the funds began to deplete rapidly inconsistent with her lifestyle. As noted above, the funds were never returned and essentially evaporated into thin air. Viewing the evidence in a light most favorable to the State, a rational jury could conclude Kraus kept the money with an intent to deprive M.S. thereof.

## IV. Sentencing

Lastly, Kraus argues the court abused its discretion by sentencing him to prison. He complains the court declined to adopt the presentence investigator's recommendation for a suspended sentence and probation. We begin with the principle that "[s]entencing decisions . . . are cloaked with a strong presumption in their favor." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (ellipsis in

original).  Our job is not to "second guess" the sentencing court's decision.  *State v. Formaro,* 638 N.W.2d 720, 724 (Iowa 2002)*.*  Instead, we assess whether the court decided on clearly untenable grounds.  *Id.*

While Kraus highlights his mitigating circumstances, he makes no complaint the court improperly failed to consider them, that it failed to consider other appropriate sentencing factors, or that it considered inappropriate sentencing factors.  Declining to second guess the sentence, which is within the statutory limits and based on considerations not alleged to be inadequate or improper, we affirm the sentence imposed.

**V.   Conclusion**

We find no error in the court's inclusion of an aiding and abetting instruction, the evidence was sufficient to support the conviction, and no discretionary abuse in sentencing has been shown.  We affirm.

**AFFIRMED.**