McEvers, Justice.
 

 [¶ 1] Borsheim Builders Supply, Inc., doing business as Borsheim Crane Service, ("Borsheim") appeals from a declaratory judgment granting summary judgment to Mid-Continent Casualty Company and dismissing Borsheim's claims for coverage. We conclude the district court erred in concluding Construction Services, Inc. ("CSI"), and Whiting Oil and Gas Corporation ("Whiting") are not insureds entitled to defense and indemnity under the "additional insured" endorsement in the commercial general liability ("CGL") policy Mid-Continent issued to Borsheim. We further conclude the court erred in holding Mid-Continent has no duty to defend or indemnify Borsheim, CSI, and Whiting under the CGL policy for the underlying bodily injury lawsuit. We reverse and remand.
 

 I
 

 [¶ 2] In May 2005, Whiting and Borsheim entered into a master service contract ("MSC"). In the MSC, Borsheim, as the "contractor," agreed to defend, indemnify, and hold harmless the Whiting Group, intending to extend Borsheim's indemnity obligation to CSI, one of Whiting's subcontractors, selected and assigned to work with Borsheim. Section 12 of the MSC states, in part:
 

 12.
 
 Indemnities
 
 .
 

 a. Contractor hereby agrees to release, defend, indemnify and hold the "Whiting Group" harmless from and against any and all loss, cost, damage or expense of every kind and nature ... arising out of bodily injury ... to the Contractor Group, ... WHETHER OR NOT RESULTING IN WHOLE OR IN PART FROM THE SOLE, CONCURRENT, OR COMPARATIVE NEGLIGENCE, OR STRICT LIABILITY OF THE Whiting GROUP.
 

 Section 2(l) of the MSC defines the "Whiting Group" as "Whiting, its Affiliates, co-owners at the Site, joint venturers, partners, contractors and subcontractors and all of their respective directors, officers, employees, representatives and agents."
 

 [¶ 3] Section 13 of the MSC requires Borsheim to "secure and maintain" insurance coverage during the term of the MSC and to "furnish certificates of such insurance satisfactory to Whiting before commencing the Work." The required insurance under this section includes "Comprehensive General Liability Insurance INCLUDING CONTRACTUAL LIABILITY" and "SHALL EXTEND TO AND PROTECT THE Whiting GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE." This section also states, "Contractor's insurance carrier(s) will provide Whiting, as evidence that the required insurance coverage has been obtained, with a certificate of insurance reflecting the amount of any deductibles."
 

 [¶ 4] In 2000, Mid-Continent issued a CGL insurance policy to Borsheim, which was renewed each year for an annual term for the following ten years. Mid-Continent provided the CGL policy at issue for the policy period April 17, 2011, to April 17,
 
 *508
 
 2012. While the CGL policy contains an exclusion for "contractual liability," the policy also contains an exception to the exclusion for an "insured contract." The term "insured contract" is defined in the CGL coverage form and is amended by the "amendment of insured contract definition" endorsement. The policy also includes an "additional insured-owners, lessees or contractors-scheduled person or organization" endorsement. Certificates of liability insurance were issued separately to Whiting and to CSI.
 

 [¶ 5] In 2011, David Stec, Borsheim's employee, was injured while working on Whiting's oil rig site when a backhoe, owned by CSI and operated by its employee, released a beam and crushed his foot. Stec and his wife subsequently commenced a negligence action against CSI. In 2013, an attorney retained to defend CSI and Whiting against Stec's underlying liability claim tendered a demand for indemnity and defense to Borsheim under the MSC and to Mid-Continent under the CGL policy. Mid-Continent denied coverage. In 2014, Borsheim sued Mid-Continent for breach of contract after Mid-Continent failed to provide a defense or indemnity coverage under its CGL policy for the underlying bodily injury lawsuit. Mid-Continent answered the lawsuit and filed a counterclaim for declaratory judgment. In 2015, Borsheim moved for summary judgment. Mid-Continent opposed the motion and filed its own summary judgment motion.
 

 [¶ 6] In March 2016, the district court entered an order for declaratory judgment concluding Borsheim is statutorily immune from liability under North Dakota's workers compensation act; the CGL policy's contractual liability exclusion applies to preclude coverage because of this immunity; CSI and Whiting are not additional insureds under the CGL policy; Mid-Continent did not breach its duty to defend; and summary judgment was inappropriate and therefore denied. In December 2017, the court entered a declaratory judgment dismissing all claims against Mid-Continent with prejudice.
 

 II
 

 [¶ 7] Our standard for reviewing summary judgment is well established:
 

 Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.
 

 Forsman v. Blues, Brews & Bar-B-Ques, Inc.
 
 ,
 
 2017 ND 266
 
 , ¶ 9,
 
 903 N.W.2d 524
 
 (quoting
 
 K & L Homes, Inc. v. Am. Family Mut. Ins. Co.
 
 ,
 
 2013 ND 57
 
 , ¶ 7,
 
 829 N.W.2d 724
 
 ) ).
 

 [¶ 8] "Insurance policy interpretation is a question of law, which is fully reviewable on appeal."
 

 *509
 

 Forsman
 
 ,
 
 2017 ND 266
 
 , ¶ 10,
 
 903 N.W.2d 524
 
 . This Court independently examines and construes the insurance contract on appeal to decide whether coverage exists.
 
 K & L Homes
 
 ,
 
 2013 ND 57
 
 , ¶ 8,
 
 829 N.W.2d 724
 
 . This Court construes policy language to give effect to the parties' mutual intention at the time of contracting:
 

 We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.
 

 Forsman
 
 , at ¶ 10 (quoting
 
 K & L Homes
 
 , at ¶ 8 ). "Exclusions from coverage ... must be clear and explicit and are strictly construed against the insurer."
 
 Schleuter v. N. Plains Ins. Co., Inc.
 
 ,
 
 2009 ND 171
 
 , ¶ 8,
 
 772 N.W.2d 879
 
 (quoting
 
 Nationwide Mut. Ins. Cos. v. Lagodinski
 
 ,
 
 2004 ND 147
 
 , ¶ 9,
 
 683 N.W.2d 903
 
 ). "While exclusionary clauses are strictly construed, a contract will not be rewritten to impose liability when the policy unambiguously precludes coverage."
 
 Forsman
 
 , at ¶ 10 ;
 
 see also
 

 K & L Homes
 
 , at ¶ 8 ;
 
 Schleuter
 
 , at ¶ 8.
 

 [¶ 9] In interpreting an insurance policy, this Court first examines its coverages before examining its exclusions.
 
 Forsman
 
 ,
 
 2017 ND 266
 
 , ¶ 11,
 
 903 N.W.2d 524
 
 ;
 
 K & L Homes
 
 ,
 
 2013 ND 57
 
 , ¶ 9,
 
 829 N.W.2d 724
 
 . "If and only if a coverage provision applies to the harm at issue will the court then examine the policy's exclusions and limitations of coverage."
 
 Wisness v. Nodak Mut. Ins. Co.
 
 ,
 
 2011 ND 197
 
 , ¶ 16,
 
 806 N.W.2d 146
 
 (quoting 1 Robert D. Goodman, John C. Dockery & Matthew S. Hackell,
 
 New Appleman Law of Liab. Ins.
 
 § 1.04[1] (2d ed. 2011) (citations omitted) ). "An exclusionary provision, or the absence of one, cannot be read to provide coverage that does not otherwise exist."
 

 Id.
 

 "Similarly, while an exception to an exclusion results in coverage, 'an exception to an exclusion is incapable of initially providing coverage; rather, an exception may become applicable if, and only if, there is an initial grant of coverage under the policy and the relevant exclusion containing the exception operates to preclude coverage.' "
 
 Forsman
 
 , at ¶ 11 (quoting
 
 K & L Homes
 
 , at ¶ 9 (citations omitted) ).
 

 [¶ 10] "It is axiomatic that the burden of proof rests upon the party claiming coverage under an insurance policy."
 
 Forsman
 
 ,
 
 2017 ND 266
 
 , ¶ 11,
 
 903 N.W.2d 524
 
 (quoting
 
 Grzadzielewski v. Walsh Cty. Mut. Ins. Co.
 
 ,
 
 297 N.W.2d 780
 
 , 784 (N.D. 1980) ). "While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions."
 
 Forsman
 
 , at ¶ 11 (quoting
 
 Travelers Indem. Co. v. Bloomington Steel & Supply Co.
 
 ,
 
 718 N.W.2d 888
 
 , 894 (Minn. 2006) ).
 

 III
 

 [¶ 11] The language of the CGL policy that Mid-Continent issued to Borsheim for the relevant period provides in part:
 

 SECTION I-COVERAGES
 

 COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
 

 *510
 
 1. Insuring Agreement
 

 a. We will pay those sums
 
 that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
 
 We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
 

 ....
 

 2. Exclusions
 

 This insurance does not apply to:
 

 ....
 

 b. Contractual Liability
 

 "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.
 
 This exclusion does not apply to liability for damages
 
 :
 

 (1) That the insured would have in the absence of the contract or agreement; or
 

 (2)
 
 Assumed in a contract or agreement that is an "insured contract"
 
 , provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
 

 (Emphasis added.) The CGL policy's definition of the term "insured contract" is amended by the "AMENDMENT OF INSURED CONTRACT DEFINITION" endorsement to provide as follows:
 

 Paragraph 9. of the Definitions Section is replaced by the following:
 

 9. "Insured contract" means:
 

 ....
 

 f.
 
 That part of any other contract or agreement pertaining to your business
 
 (including an indemnification of a municipality in connection with work performed for a municipality)
 
 under which you assume the tort liability of another party to pay for "bodily injury"
 
 or "property damage"
 
 to a third person or organization
 
 , provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
 

 (Emphasis added.) The CGL policy also includes an "ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-SCHEDULED PERSON OR ORGANIZATION" endorsement, which provides, in part:
 

 Name of Person or Organization:
 

 Any person or organization for whom the named insured has agreed by written "insured contract" to designate as an additional insured subject to all provisions and limitations of this policy.
 

 In conjunction with the CGL policy's issuance, a "CERTIFICATE OF LIABILITY INSURANCE" was issued to Whiting, and a separate "CERTIFICATE OF LIABILITY INSURANCE" was issued to CSI.
 

 A
 

 [¶ 12] Borsheim argues the district court erred in concluding Mid-Continent does not have a duty to defend or indemnify in the underlying
 
 Stec
 
 lawsuit. Borsheim argues that the CGL policy's "contractual liability" exclusion does not preclude coverage because the exception to the exclusion for an "insured contract" applies; the MSC is an "insured contract"
 

 *511
 
 under the policy's amended definition; and CSI and Whiting are additional insureds under the CGL policy's endorsement. We agree.
 

 [¶ 13] Regarding the definition of "insured contract" found in subparagraph 9(f), one treatise has explained:
 

 Definition f of "insured contract" is most commonly the subject of litigation. In order to fall within definition f, and fall within the exception to the contractual liability exclusion, three elements must be established: (1) the contract must pertain to the insured's business; (2) the insured must assume the tort liability of another; and (3) the tort liability must be liability that would be imposed by law in the absence of any contract or agreement.
 

 3 Jeffrey E. Thomas & Francis J. Mootz, III,
 
 New Appleman on Insurance Law Library Edition
 
 § 18.03[3][c] (2018). Under the CGL policy's amended definition for "insured contract," specifically subparagraph 9(f), the MSC falls within the definition of an "insured contract." Subparagraph 9(f) plainly states an "insured contract" includes "[t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' ... to a third person ... provided the 'bodily injury' ... is caused, in whole or in part, by you or by those acting on your behalf." The MSC provides that Borsheim agrees to defend, indemnify, and hold harmless the Whiting Group, and the broad indemnity language includes tort liability for bodily injury. Under the MSC, the Whiting Group includes both CSI and Whiting. The CGL policy's additional insured endorsement, therefore, includes both CSI and Whiting.
 

 [¶ 14] To the extent the district court held, and Mid-Continent argues, Borsheim could not be liable in the underlying suit because of North Dakota's workers compensation act, this argument ignores subparagraph 9(f)'s plain language, as there is a difference between "causing" an injury and being "liable" for the injury.
 
 See
 

 Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London
 
 ,
 
 788 F.3d 375
 
 , 380 (4th Cir. 2015) (citing
 
 Gilbane Bldg. Co. v. Admiral Ins. Co.
 
 ,
 
 664 F.3d 589
 
 , 598 (5th Cir. 2011), and Scott C. Turner,
 
 Insurance Coverage of Construction Disputes
 
 , § 42:4 (2015) ). The language "is caused, in whole or in part, by you or by those acting on your behalf" under subparagraph 9(f) only requires Borsheim to have in part "caused" the injury, rather than be actually liable for it. Borsheim contends there is no dispute Borsheim in part caused Stec's injury.
 

 [¶ 15] Neither party argues on appeal that genuine issues of material fact preclude summary judgment on whether the CGL policy provides coverage. Although the
 
 Stec
 
 complaint names only CSI as a defendant, the negligence suit alleges that Stec is Borsheim's employee, and CSI's answer to the complaint specifically alleges Borsheim was at fault. There is undisputed evidence in the record in the form of an expert report opining that Borsheim was in part at fault for Stec's injuries. In the MSC Borsheim assumed both CSI's and Whiting's tort liability to Stec. Therefore, consistent with subparagraph 9(f), the MSC pertains to Borsheim's business; Borsheim assumed the tort liability of Whiting Group, including Whiting and CSI; and CSI's tort liability is liability that would be imposed by law in the absence of any contract or agreement.
 
 See
 

 Harleysville Mut. Ins. Co. v. Reliance Nat'l Ins. Co.
 
 ,
 
 256 F.Supp.2d 413
 
 , 418 (M.D.N.C. 2002) ("The only reasonable interpretation of subparagraph f. is one in which an 'insured contract' is the contractual assumption by
 
 *512
 
 the insured of another's tort liability, which tort liability arises under law and not by the
 
 indemnitee's
 
 contractual assumption of yet another party's liability."). We conclude subparagraph 9(f)'s definition of "insured contract" is satisfied based on the undisputed facts.
 

 [¶ 16] Construing the plain language of the CGL policy, we conclude that CSI is an additional insured under the policy endorsement, that the "contractual liability" exclusion does not apply to CSI because the Stecs' claims against CSI are direct claims of tort liability, and that the "contractual liability" exclusion does not apply to Borsheim because the exception applies for damages "[a]ssumed in a contract or agreement that is an 'insured contract',"
 
 i.e.
 
 , the MSC. We therefore conclude the district court erred in ruling that the CGL policy did not provide coverage for the underlying
 
 Stec
 
 lawsuit against CSI.
 

 B
 

 [¶ 17] Borsheim argues Mid-Continent had a duty to defend CSI, Borsheim and Whiting in the underlying lawsuit.
 

 [¶ 18] In
 
 Forsman
 
 ,
 
 2017 ND 266
 
 , ¶¶ 31-32,
 
 903 N.W.2d 524
 
 , this Court explained:
 

 An insurer's duty to defend is broader than its duty to indemnify and is determined by the injured claimant's allegations.
 
 Farmers Union Mut. Ins. Co. v. Decker
 
 ,
 
 2005 ND 173
 
 , ¶ 13,
 
 704 N.W.2d 857
 
 . An insurer's duty to defend and duty to indemnify its insured "are two separate and distinct contractual obligations, and are determined by applying different standards."
 
 Tibert v. Nodak Mut. Ins. Co.
 
 ,
 
 2012 ND 81
 
 , ¶ 33,
 
 816 N.W.2d 31
 
 . Regarding the duty to defend, "[a]n insurer does not have a duty to defend unless there is a
 
 possibility of coverage
 
 contained in the allegations of the claimant's complaint."
 
 Decker
 
 , at ¶ 15 (emphasis added).
 

 "When several claims are made against the insured in the underlying action, the insurer has a duty to defend the entire lawsuit if there is potential liability or a possibility of coverage for any one of the claims."
 
 Tibert
 
 ,
 
 2012 ND 81
 
 , ¶ 30,
 
 816 N.W.2d 31
 
 ;
 
 see
 

 Schultze v. Continental Ins. Co.
 
 ,
 
 2000 ND 209
 
 , ¶ 14,
 
 619 N.W.2d 510
 
 ;
 
 Nodak Mut. Ins. Co. v. Heim
 
 ,
 
 1997 ND 36
 
 , ¶ 11,
 
 559 N.W.2d 846
 
 . "Any doubt about whether a duty to defend exists must be resolved in favor of the insured."
 
 Tibert
 
 , at ¶ 31 ;
 
 see
 

 Schultze
 
 , at ¶ 13. Even when an insurer has rightfully denied coverage, "the insurer's duty may be revived by the insured's new allegations that possibly bring the claim within the scope of the policy's provisions."
 
 Decker
 
 ,
 
 2005 ND 173
 
 , ¶ 15,
 
 704 N.W.2d 857
 
 (finding an insurer's duty to defend arose when complaint was amended). While the duty to defend focuses on the complaint's allegations, the duty to indemnify generally is determined by the actual result in the underlying action.
 
 Tibert
 
 , at ¶ 33.
 

 [¶ 19] In
 
 Tibert
 
 ,
 
 2012 ND 81
 
 , ¶ 36,
 
 816 N.W.2d 31
 
 , this Court explained an insurer's obligations to decide whether a duty to defend exists in considering whether a policy exclusion applies:
 

 [I]f the allegations pleaded in the complaint viewed at the time of tender include any potential liability or possibility of coverage under the policy, there is a duty to defend, and the insurer cannot simply refuse to provide a defense in the hope that the facts as determined by the factfinder in the underlying lawsuit preclude coverage under a policy exclusion. The insurer is not free to refuse to provide a defense, wait until the case is tried, and then with the benefit of hindsight claim the jury's resolution of disputed factual allegations is res judicata on the issue of duty to defend. The
 
 *513
 
 insurer's duty to defend is set by the pleadings and must be determined as of the time the defense i[s] tendered; it is not affected by "the course and outcome of the litigation." 44 Am. Jur. 2d
 
 Insurance
 
 § 1400 (2003). An insurer faced with legitimate questions whether the factual allegations in the complaint create a duty to defend has an immediate remedy to resolve the question. The insurer (or the insured) can bring a declaratory judgment action to determine duty to defend before the underlying action is tried.
 
 See
 
 N.D.C.C. § 32-23-06. However, "[w]here a claim potentially may become one which is within the scope of the policy," and the insurer does not avail itself of its right to seek an immediate declaratory judgment under N.D.C.C. § 32-23-06, "the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril."
 
 Prince v. Universal Underwriters Ins. Co.
 
 ,
 
 143 N.W.2d 708
 
 , 717 (N.D. 1966) (quoting
 
 Cadwallader v. New Amsterdam Cas. Co.
 
 ,
 
 396 Pa. 582
 
 ,
 
 152 A.2d 484
 
 , 488 (1959) ).
 

 [¶ 20] Borsheim argues that, as the named insured, there is no question it was entitled to coverage, including a defense, because the
 
 Stec
 
 lawsuit's allegations fall within the insuring agreement and no exclusion applies; and even though not specifically named as a party in the underlying lawsuit, Borsheim is legally obligated to pay damages under the MSC. Borsheim further contends both CSI and Whiting are entitled to a defense because they qualify as an additional insureds, the underlying complaint's allegations fall within the scope of coverage, and no other exclusion or provision precludes coverage.
 

 [¶ 21] Mid-Continent's duty to defend under the CGL policy arose if there was potential liability or possibility of coverage for any of the claims in the
 
 Stec
 
 complaint. This is true even though Borsheim was not specifically named as a defendant in the underlying action. For example, in
 
 Ramara, Inc. v. Westfield Ins. Co.
 
 ,
 
 814 F.3d 660
 
 (3d Cir. 2016), the court rejected the arguments that a state's workers' compensation act precluded the underlying defendant from qualifying as an additional insured and that the failure to name the named insured as a defendant precluded application of the Additional Insured Endorsement. In holding the insurer had a duty to defend, the court explained that it was not expanding or modifying the "four corners" rule under state law:
 

 Clearly, a court taking into account the four corners rule must take care to base its analysis of the complaint on its factual allegations. Rather, we hold that where the Workers' Compensation Act is relevant to a coverage determination, insurers (and the courts that review their determinations) must interpret the allegations of an underlying complaint recognizing that the plaintiff's attorney in the underlying action drafted the complaint taking the existence of the Act into account. In this way, the Act operates as an interpretive constraint, making it more difficult for insurers to claim that the allegations of an underlying complaint fall patently outside the scope of coverage. This result is consistent with the four corners rule and the principles underlying policy interpretation itself.
 

 Id.
 

 at 679-80
 
 (footnotes omitted). Here, the
 
 Stec
 
 complaint alleged a negligence claim against CSI, and further specifically alleged that Stec was Borsheim's employee. CSI is an additional insured under the CGL policy. In CSI's answer to the complaint, CSI alleged Borsheim would also be at fault. While not named as a party defendant, Borsheim would nonetheless potentially have coverage under the CGL policy
 
 *514
 
 at issue. Under these facts and circumstances, resolving any doubt about the duty to defend in the insureds' favor, we conclude the district court erred in holding Mid-Continent did not have a duty to defend in the underlying lawsuit.
 

 [¶ 22] We reverse the district court's judgment holding the CGL policy at issue did not provide coverage or defense for the underlying
 
 Stec
 
 suit and remand for further proceedings to consider an award of damages.
 

 IV
 

 [¶ 23] Borsheim requests that the case be remanded for consideration of damages and a purported claim for bad faith against Mid-Continent. While we reverse and remand for considerations of damages, we note that Borsheim's complaint does not specifically allege a bad faith claim. On remand, Borsheim may move the district court for leave to amend the pleadings to specifically allege bad faith, and the court in its discretion may consider whether to grant leave to amend the complaint.
 

 V
 

 [¶ 24] We have considered Mid-Continent's other arguments and conclude they are either unnecessary to our opinion or are without merit. The judgment is reversed and remanded for further proceedings.
 

 [¶ 25] Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.