**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2902

———————

WESTMINSTER AMERICAN INSURANCE CO;
WALDY REYES; ARGENIS REYES;
ROSALBA MUNOZ, H/W, As Assignees of
4207 Chester Ave, LLC,

Appellants

v.

SECURITY NATIONAL INSURANCE COMPANY

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-20-cv-02195)
District Judge:  Honorable John R. Padova

———————

Submitted under Third Circuit L.A.R. 34.1(a)
on September 10, 2024

Before: CHAGARES, <u>Chief Judge</u>, ROTH and RENDELL, <u>Circuit Judges</u>

(Opinion filed : December 5, 2024)

ROTH, <u>Circuit Judge</u>

Appellants Westminster American Insurance Co., Argenis Reyes, and Rosalba Munoz (the latter two acting as assignees of 4207 Chester Ave, LLC and Waldy Reyes) appeal the District Court's order dismissing their complaint against Security National Insurance Company for failure to state a claim. We will affirm.

## I.[1]

On June 25, 2019, Argenis Reyes and Waldy Reyes were engaging in repair work at 4207 Chester Avenue in West Philadelphia (the Building).[2] Argenis worked for Altman Management Company, Inc., which managed the Building on behalf of 4207 Chester Ave, LLC (4207 Chester). Waldy worked for AM Marlin Construction, LLC (Marlin), and was brought in to repair a ceiling leak. Argenis and Waldy were attempting to transport debris from the repair work via the Building's fire escape when it detached, injuring both Waldy and Argenis.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] As we write for the parties, we recite only those facts necessary for our disposition, taking all well-pleaded allegations as true. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).

[2] As Argenis and Waldy share a surname, to avoid confusion, we refer to them by their first names throughout this opinion.

4207 Chester was insured by two relevant insurance policies. It was the named insured under a commercial general liability (CGL) policy issued by Westminster American Insurance Co., which had a policy cap of $6 million. It was also a scheduled additional insured under an endorsement to Marlin's CGL policy, issued by Security National Insurance Company (SNIC), which had a policy cap of $1 million. The central provision of that endorsement (the Additional Insured Endorsement) provided that:

> **Section II – Who is An Insured** is amended to include as an insured the person or organization shown in the Schedule [*e.g.*, 4207 Chester], but only to the extent that the person or organization shown in the Schedule is held liable for your [*i.e.*, Marlin's] acts or omissions arising out of your ongoing operations performed for that insured.[3]

The SNIC Policy required SNIC to defend Marlin, its employees, and (where applicable) 4207 Chester "against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance applies."[4] "Suit" is defined as:

> [A] civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes: a. An arbitration proceeding to which such damages are claimed and to which the insured must submit or does submit with our consent; or b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.[5]

After the accident, Westminster contacted SNIC on December 26, 2019, and demanded it defend and indemnify 4207 Chester "as an additional insured on Marlin's liability policy."[6] SNIC replied on January 2, 2020, noting it had commenced an

---

[3] Appx. 272.
[4] Appx. 229.
[5] Appx. 243.
[6] Appx. 284–85.

3

investigation and requesting additional information. Westminster replied on January 8, 2020. Westminster's December 26 and January 8 letters both listed Argenis and Waldy as potential claimants, and neither suggested Argenis was pursuing a claim against Waldy or Marlin.[7]

On January 15, 2020, SNIC informed Westminster that it had identified a potential coverage issue and sought further additional information. Westminster responded to this letter on February 7, 2020. While Westminster's response mentioned that 4207 Chester and Marlin were potentially adverse, it still did not say that Argenis was considering pursing a claim against Waldy or Marlin.

On March 19, 2020, Argenis sent a formal demand letter to 4207 Chester, accusing it of failing to maintain the fire escape and alleging conscious noncompliance with applicable safety regulations. Westminster forwarded this letter (and an accompanying demand package) to SNIC on April 3, 2020, and reiterated its belief that SNIC was obligated to defend and indemnify 4207 Chester. SNIC ultimately provided its formal disclaimer of coverage on May 6, 2020. SNIC asserted that because Marlin had not performed any work on, and was not responsible for, the subject balcony, 4207 Chester did not qualify for coverage as an additional insured. On May 8, 2020, Westminster requested that SNIC participate in a mediation on May 13, 2020 (which other relevant parties were scheduled to attend). Westminster also noted it had initiated a lawsuit against SNIC. SNIC responded that same day, declining to participate in the mediation.

---

[7] Indeed, the January 8 letter stated that Argenis and Waldy were being jointly represented.

On May 12, 2020, Argenis contacted SNIC and requested that it tender its policy limit. Unlike prior communications, this demand asserted claims against Waldy and Marlin. SNIC responded on May 13, 2020, denying that either Waldy or Marlin had any responsibility for Argenis's injuries and refusing to tender its policy limit.[8] Subsequently, Waldy contacted SNIC on May 20, 2020, demanding that SNIC assist in settling the claims against him, or he would settle those claims on his own. This letter demanded a response by 5:00 PM on May 22, 2020. SNIC did not respond, but on May 21, 2020, it sent an updated denial of coverage to Westminster regarding 4207 Chester—this time also disclaiming coverage on the basis of the SNIC policy's Employee Liability Exclusion (ELE). Waldy and 4207 Chester subsequently entered into a settlement with Argenis and Munoz, mainly consisting of an assignment of their claims against SNIC.

## II

Appellants' Second Amended Complaint (SAC) alleges eight causes of action, including breach of contract, bad faith, breach of covenant of good faith, and request for declaratory judgment. Appellants do not contest the District Court's determination that each claim ultimately hinges on one of two allegations: (1) that SNIC breached its obligation to defend 4207 Chester, and (2) that SNIC breached its obligation to defend Waldy.

SNIC initially moved to dismiss the SAC on July 27, 2020. On August 16, 2021, following extensive briefing and oral argument, the District Court ordered the SAC

---

[8] SNIC's reply is not time-stamped, but the parties do not contest that it was sent at 4:58 PM, following the mediation.

5

dismissed in full. While SNIC raised multiple arguments for dismissal, the District Court's opinion focused solely on the ELE, which it determined was a sufficient basis for dismissal. On appeal, we determined that the ELE was reasonably susceptible to an interpretation which did not bar Appellants' claims, and, as such, was required to be construed in their favor as the insured.[9] While noting SNIC had raised alternative bases for dismissal, we declined to consider them in the first instance.[10] We therefore vacated the District Court's order and remanded for further proceedings.

On remand, the District Court requested additional briefing from the parties on various subjects, including "[w]hether the Second Amended Complaint alleges that Argenis Reyes, Rosalba Munoz, and/or Waldy Reyes asserted claims against 4207 Chester Ave. for AM Marlin's acts or omissions[,]" and "[w]hether the Second Amended Complaint alleges that SNIC consented to Waldy Reyes's participation in the May 13, 2020 mediation or waived its right to consent to his participation in the mediation." On September 22, 2023, following supplemental briefing, the District Court issued an order again dismissing the SAC in full. This appeal followed.

**III.**

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* whether a district court has properly complied with our mandate on remand.[11] Our review of a dismissal for failure to

---

[9] *Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co.* ("*Westminster I*"), 2023 WL 4399217 at *2–4 (3d Cir. July 7, 2023).
[10] *Id*. at *4 nn. 20, 21.
[11] *United States v. Kennedy*, 682 F.3d 244, 253 n.7 (3d Cir. 2012).

state a claim is also *de novo*, applying the same standard as the District Court.[12] We "accept [Appellants'] factual allegations as true and consider those facts in the light most favorable" to them, but "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements."[13] To avoid dismissal, "a complaint must set forth enough factual allegations to state a claim for relief that is plausible on its face."[14] While we "may not consider matters extraneous to the pleadings[,]" if "a document is integral to or explicitly relied upon in the complaint, it may be considered without converting the motion to dismiss into one for summary judgment[.]"[15]

**IV.**

As a threshold matter, Appellants argue that the District Court lacked authority to grant SNIC's motion to dismiss on remand. We disagree.

"It is unremarkable to say that, on remand, a district court must comply with the letter and spirit of the mandate issued by the court of appeals."[16] This "mandate rule

---

[12] *Doe*, 30 F.4th at 341.
[13] *Id*. at 342 (cleaned up).
[14] *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[15] *Doe*, 30 F.4th at 342 (internal quotation marks and citations omitted) (noting that, at this stage, where "the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail").
[16] *Bedrosian v. U.S. Dep't of Treasury, Internal Revenue Serv.*, 42 F.4th 174, 179 (3d Cir. 2022) (cleaned up).

applies, however, only to those issues that were decided by the appellate court."[17]  As such,

"a district court ordinarily has substantial discretion in conducting further proceedings after

a remand."[18]  Here, the record reveals that the District Court complied with both the letter

and spirit of our mandate.  While Appellants cite our wish not to decide Appellants'

"extracontractual claims" on "an undeveloped record"—this was a request for "meaningful

examin[ation]" of those claims by the District Court, not an order for additional fact

discovery (which is irrelevant to the sufficiency of the SAC).[19]

Appellants further argue that, as the District Court had already issued an order

granting SNIC's motion to dismiss (*i.e.*, the order we vacated), there was no pending

motion to resolve on remand.  We disagree.  Vacatur of a district court order "cancels"

that order retroactively, rendering it "void."[20]  As such, the District Court properly

---

[17] *Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 857 (3d Cir. 1994), *abrogated on other grounds by Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 302 (2022); *see also Eichorn v. AT&T Corp.*, 484 F.3d 644, 657 (3d Cir. 2007) (noting that "district courts are free to consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision" (internal quotation marks omitted)).

[18] *Habecker v. Clark Equip. Co.*, 942 F.2d 210, 217 (3d Cir. 1991).

[19] *Westminster I*, 2023 WL 4399217 at *4 n.20.

[20] *United States v. Mitchell*, 38 F.4th 382, 388 (3d Cir. 2022); *see also U.S. v. Jerry*, 487 F.2d 600, 607 (3d Cir. 1973), *abrogated on other grounds by Ohio v. Johnson*, 467 U.S. 493, 500 (1984) (noting "the general rule that when a court vacates an order previously entered, the legal status is the same as if the order never existed").

viewed its vacated order as if it had never taken place—thus, SNIC's motion was once again pending. [21] Waiting for a renewed motion was neither necessary nor warranted.

Having found that the District Court's order was not procedurally erroneous, we will proceed to examine it on the merits.

## V.

Appellants argue that the District Court erred in finding (1) that Argenis's claims against 4207 Chester were not covered by the Policy's Additional Insured Endorsement; and (2) that Argenis's claims against Waldy did not constitute a "suit" as defined in the Policy. We consider each argument in turn.

## A.

The District Court found that SNIC had no duty to defend 4207 Chester because it was not an "additional insured" under the Additional Insured Endorsement, which insures 4207 Chester "only to the extent that [it] is held liable for [Marlin's] acts or omissions arising out of [Marlin's] ongoing operations performed for [4207 Chester]."[22] The District Court reasoned that the demand materials forwarded to SNIC stated claims against 4207

---

[21] *See Drummond v. Robinson Twp.*, 9 F.4th 217, 224, 235 (3d Cir. 2021) (holding the district court "did not disregard our prior order" by granting a previously reversed motion to dismiss on alternative grounds, even though neither party had "filed any motions" in the interim) *abrogated on other grounds by N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1, 71 (2022).

[22] Appx. 272.

Chester for its own failure to maintain the fire escape, not for Marlin's acts or omissions.[23]

Argenis and Munoz (standing in 4207 Chester's shoes as assignees), as well as Westminster (standing in its shoes as subrogee), dispute this determination.

Appellants argue that the District Court should have applied a but-for causation standard in interpreting the Additional Insured Endorsement. They note that their complaint extensively alleges that Argenis would not have been standing on the collapsed fire escape had he not been assisting Waldy in the course of his repair work. They argue that this is sufficient to require coverage. They do *not* argue that they adequately pled a cause of action under any higher standard.[24] SNIC, meanwhile, does not contest that it would have been obligated to defend 4207 Chester if a but-for standard were applicable. As such, the determination of this portion of the appeal depends entirely on a proper interpretation of the endorsement.

Some basic background regarding additional insured provisions is useful. Like most CGL policies, SNIC's Additional Ensured Endorsement is based on a standardized form

---

[23] Under Pennsylvania law, the interpretation of an insurance policy is a question of law subject to *de novo* review. *401 Fourth Street, Inc. v. Investors Ins. Group.*, 879 A.2d 166 (Pa. 2005). While the primary aim is to discern the parties' intent, where genuine ambiguity persists it must be interpreted in favor of coverage. *Id.* In analyzing a policy, "we must take care not to violate the cardinal principle of interpretation than an insurance policy must be construed in such a manner as to give effect to all of its provisions." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 258 (3d Cir. 2019) (cleaned up).

[24] Appellants make one passing reference to a bare allegation in the SAC that Argenis and Munoz claimed "AM Marlin and Waldy (as AM Marlin's employee) were responsible" for their injuries. App. Br. at 19. This conclusory assertion, which does not refer to any provided basis for Marlin's purported responsibility, is not enough to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

drafted by Insurance Services Office, Inc. (ISO).[25] Historically, the most common ISO form used for additional ensured endorsements provided coverage for all "liability arising out of [the named insured's] ongoing operations performed for [the additional insured].[26] Courts traditionally interpreted this language broadly, applying it even to claims which alleged no negligence by the named insured.[27] Most relevantly, it is "well-settled" that "Pennsylvania courts consistently interpret 'arising out of' to require 'but for' causation" and nothing more.[28]

Appellants note the Additional Ensured Endorsement uses the terms "arising out of [Marlin's] ongoing operations" and argue that it should be interpreted similarly. Had SNIC's policy extended coverage to *all* liability "arising out of Marlin's ongoing operations performed for" 4207 Chester, they would be right. They adequately allege that Argenis's injuries arose out of Marlin's ongoing operations for 4207 Chester.

However, this interpretation focuses on the wrong half of the endorsement. The words "arising out of" in the SNIC Policy follow the limitation of "to the extent that" the additional insured [*i.e.*, 4207 Chester] "is held liable for" the "acts or omissions" of the

---

[25] *See* Appx. 272; *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) (noting that the ISO is the "almost exclusive source of support services in this country for CGL insurance").

[26] *See generally* 4 Bruner & O'Connor on Construction Law §§ 11:322, 330 (2023).

[27] *See generally id.* at § 11:330; *see also* Theresa Guertin & Tracy Alan Saxe, Insurance Coverage of Construction Disputes § 42:4 (2024).

[28] *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159–60 (3d Cir. 2017) (collecting authority).

primary insured [*i.e.*, Marlin].[29]   The connection between Marlin and 4207 Chester is governed by this first half of the endorsement.

This language matters.   While neither the Pennsylvania Supreme Court nor this Court have interpreted a CGL policy with the language "to the extent [an additional insured] is held liable for your acts or omissions," other courts have unanimously found it to require vicarious liability, not just but-for causation.[30]  We believe that the Pennsylvania Supreme Court would likewise find that but-for causation is insufficient under this formulation.   Indeed, the Pennsylvania Supreme Court has recognized that, barring evidence to the contrary, liability "to the extent" of some trigger generally implies liability capable of apportionment, rather than all-or-nothing liability.[31]   Appellants' contrary interpretation that the SNIC policy was intended to require SNIC to indemnify 4207 Chester for liability arising out of Marlin's conduct—regardless of Marlin's degree of fault—would render the clause's preface both contradictory and misleading.[32]

---

[29] Appx. 272.

[30] *See, e.g.*, *Wilson Cent. Sch. Dist. v. Utica Mut. Ins. Co.*, 123 A.D.3d 920, 921 (N.Y. App. Div. 2014); *Graphic Arts Mut. Ins. Co. v. DaVita Healthcare Partners, Inc.*, 2019 WL 1503077 at *5 (Ill App. Ct. 2019); *National Union Fire Ins. Co. v. Nationwide Ins. Co.*, 69 Cal.App. 4th 709, 719–20 (Cal. App. Div. 1999); *see also Borsheim Builders Supply, Inc. v. Manger Ins., Inc.*, 917 N.W.2d 504, 511 (N.D. 2018).

[31] *Greer v. City of Phila.*, 568 Pa. 244, 249–50 (2002) (finding, in a non-insurance indemnity case, that an agreement to indemnify another party "to the extent" those damages were caused by the indemnifying party plainly "communicated [the parties'] intent to limit any indemnification to that portion of damages attributed" to the indemnifying party).

[32] Notably, courts finding that other modifications to CGL additional insured clauses did not require more than but-for causation have used language such as "held liable for" or "to the extent" as examples of what would be enough to do the trick.  *See, e.g.*, *Md. Cas. Co. v. Regis Ins. Co.*, 1997 WL 164268 at *4 (E.D. Pa., 1997); *PAR Elec. Contractors, Inc. v. BlueLine Rental LLC*, 2017 WL 374477, at *9 (E.D. Wash. Jan 25, 2017).

Appellants do not provide an alternative explanation for the words "to the extent . . . held liable for."[33]  Thus, we hold that the District Court correctly determined that merely pleading that Argenis's injuries arose from Marlin's work-related acts or omissions, without pleading facts to support the reasonable inference that 4207 Chester was being held liable for Marlin's negligence, was insufficient to state a claim.  Dismissal was appropriately granted.

**B.**

Waldy Reyes was an employee of Marlin, and thus undoubtedly covered by the SNIC Policy.[34]  Nevertheless, the District Court found that SNIC did not have a duty to defend Waldy because the SNIC Policy expressly limits its duty to "suits."  Waldy was never the subject of a "suit" arising from the fire escape collapse.[35]  Standing this time in Waldy's shoes, Argenis and Munoz argue that this determination was in error.

We are not convinced by their assertion that the demand materials provided to SNIC are enough, standing on their own, to constitute a "suit" under the SNIC Policy.  Even where the term is undefined, Pennsylvania courts have recognized that "a simple demand letter threatening a lawsuit" generally does not constitute a "suit" as used in CGL

---

[33] While Appellants assert in their Reply that they "did not ignore the 'is held liable for your acts or omissions'" clause, they do not provide any authority that these words are compatible with a but-for causation standard, do not suggest an alternative interpretation for them, and do not point to any allegation in the SAC suggesting liability under a heightened causation standard.  Rep. Br. 12–13.

[34] Appx. 237.

[35] *See* Appx. 229.

13

policies.[36]   As the term "suit" is expressly defined in the SNIC Policy,[37] a pre-suit demand letter (even a detailed one accompanied by a specific demand) does not qualify as a "civil proceeding."[38]   Obligating SNIC to defend Waldy simply because it had received notice of his claim would also collapse the difference between "claims" and "suits" under the policy.[39]   Moreover, given that any detailed demand letter might be reframed as an arbitral demand, SNIC's right to deny consent to arbitration would be rendered largely meaningless.

Nor can we accept that the May 13, 2020, mediation (which Waldy attended) qualified as an "alternative dispute resolution proceeding" under the SNIC Policy.[40] While no party seriously contests that mediations are a form of ADR, the District Court correctly noted that the SNIC Policy only considered ADR proceedings to be "suits" if SNIC had consented to them.[41]   Argenis and Munoz do not plead any facts suggesting

---

[36] *Pennsylvania Manufacturers' Assoc' Ins. Co. v. Johnson Matthey, Inc.*, 243 A.3d 298, 310 (Pa. Super. 2020); *see also Sanders v. Phoenix Ins. Co.*, 843 F.3d 37, 45 (1st Cir. 2016).

[37] *See* Part I *supra*.

[38] *See* Black's Law Dictionary (5th ed.), *Proceeding* (noting that the term refers to "the form and manner of conducting juridical business *before a court or judicial officer . . .* [or to] administrative proceedings before *agencies, tribunals, bureaus, or the like*") (emphasis added); 42 Pa. C.S.A. § 102 (defining a "Proceeding" as including "declaration[s], petition[s], or other application[s] which may be *made to a court*") (emphasis added); *see also Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 519–20 (3d Cir. 2012) ("No amount of participation by [the claimant] in the sanctions proceedings would be sufficient prior to the filing of a 'suit'—which means under the Policy 'a civil proceeding that seeks damages"—a prerequisite to [the insurer's] liability).

[39] *See* Appx. 267; *see also Johnson Matthey*, 243 A.3d at 310.

[40] Appx. 243.

[41] *Id.*

14

that SNIC consented to the May 13 mediation, either expressly or by inference. To the contrary, their complaint shows that SNIC expressly declined to participate.[42]

Argenis and Munoz nevertheless argue that SNIC had already declined coverage of Waldy's claims, and therefore had waived any right to decline consent to the mediation. It is true that Pennsylvania courts generally consider consent requirements waived once an insurer has declined coverage.[43] But the SAC fails to plead any facts suggesting that, prior to May 13, SNIC had declined coverage as to Waldy. [44] While Argenis and Munoz allege SNIC was on notice of claims against Waldy for months prior to the mediation, the cited correspondence refers exclusively to claims against 4207 Chester. None refers to a potential claim against Marlin or Waldy.[45] SNIC's denial of

---

[42] Appx. 321.

[43] *See Fisher v. USAA Cas. Ins. Co.*, 973 F.2d 1103 1107–08 (3d Cir. 1992); *Roberts v. Fireman's Ins. Co. of Newark, N.J.*, 101 A.2d 747, 750 (Pa. 1954). This rule has been alternatively justified as a form of equitable waiver, *Roberts*, 376 Pa. at 107, or an extension of the general "principle that a party to a contract may not complain of a breach caused by his own default," *Kolbe v. Aegis Ins. Co.*, 537 A.2d 7, 8 (Pa. Super. 1987).

[44] Argenis and Munoz argue that the District Court erred in determining that Waldy failed to comply with the SNIC Policy's notice requirements. If this was in fact the District Court's determination, we agree it should not have been made on a motion to dismiss. *See Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 198 (Pa. 1977) (mandating that an insurer invoking such a provision affirmatively show prejudice). Nevertheless, we do not read the District Court so broadly. Instead, we read it as simply observing that—for the period when SNIC was not asked to defend Waldy, was not asked to defend Marlin, and made no statements regarding the defense of either—Argenis and Munoz have not plausibly alleged that SNIC would reasonably have been perceived as declining coverage as to Waldy.

[45] *See* Appx. 287 (responding to a tender letter from 4207 Chester); 290–91 (describing Waldy and Argenis as jointly represented claimants against 4207 Chester); 293–94 (seeking more information regarding 4207 Chester's liability); 308–12 (determining that "no coverage is available for 4207 under AM's policy"). While Appellants initial complaint was filed prior to the mediation, it asserted claims solely as to 4207 Chester, and made no reference of potential claims as to Waldy.

15

coverage to 4207 Chester simply does not imply a denial as to Waldy.[46]  While Argenis

and Munoz argue that SNIC affirmatively denied coverage to Waldy, the communication

they cite unambiguously refers only to claims against 4207 Chester and expresses no

opinion on whether SNIC would have defended Waldy if a suit had been filed against

him.[47]  As SNIC was therefore under no obligation to defend Waldy at the May 13

mediation, it breached no duty by failing to do so.

Finally, Argenis and Munoz appear to argue in their reply brief that, despite

occurring *after* the nonconsensual mediation was completed, SNIC's failure to respond to

Waldy's May 20, 2020, request for coverage was sufficient to bind SNIC to the May 22,

2020, settlement.[48]  It is well established that, barring "manifest injustice," we will not

generally consider arguments raised for first in reply.[49]  Moreover, it is, at best, doubtful

that SNIC's failure to respond within 48 hours to a pre-suit demand for settlement

(regarding a potential claim they had been notified of 10 days prior) would constitute a

denial of coverage under Pennsylvania law, particularly where that demand failed to

---

[46] Rep. Br. at 13.  This is particularly so since, at the time of the mediation, the only basis SNIC provided for denying coverage was that 4207 Chester was not an additional insured under the SNIC Policy, which plainly would not have applied to Waldy.

[47] App. Br. 41 (citing Appx. 308–12).

[48] Appellants do not cite to SNIC's May 21st updated disclaimer, which is addressed exclusively to 4207 Chester.  Moreover, to the extent it bears on how SNIC might have evaluated a potential claim against Waldy, Appellants do not assert that Waldy saw or was aware of the updated disclaimer before deciding to settle.

[49] *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 146–47 (3d Cir. 2017) (internal quotation omitted).

provide details regarding the basis for Argenis's claim against Waldy.[50]  As such, we decline to disturb the District Court's opinion on this ground. [51]

Given the lack of a civil proceeding, consensual ADR proceeding, or preemptive declination of coverage, the SAC fails to allege that Waldy's insurance was ever triggered (let alone breached).  As such, dismissal was proper as to these claims.

## VI.

For the above reasons, we will affirm the District Court's order granting SNIC's motion to dismiss.

---

[50] While non-responsiveness by an insurer may in some instances amount to a rejection, this is only where it is protracted and unreasonable under the circumstances.  *See Murphy & Co. v. Manufacturers' Casualty Company*, 89 Pa.Super. 281, 286–87 (Pa. Super. 1926); *Fisher*, 973 F.2d at 1107; *cf. Nationwide Mut. Ins. Co. v. Lehman*, 743 A.2d 933, 938–40 (Pa. Super. 1999).  These requirements are particularly salient when an insured seeks to settle pre-suit, and no duty to defend yet exists.  *See 2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies of Greater Phila.*, 489 A.2d 733, 736 (Pa. 1985) (holding that, to constitute anticipatory breach, a refusal must be "absolute and unequivocal"); *Gemini Ins. Co. v. Meyer Jabara Hotels, LLC.*, 231 A.3d 839, 852 (Pa. Super. 2020) (holding that implied waiver cannot generate new insurance obligations).

[51] Argenis and Munoz rely heavily on the Connecticut Supreme Court's decision in *Capstone Bldg. Corp. v. American Motorists Ins. Co.* that, *where an insurer has provided a "clear denial of coverage"* in response to a pre-suit demand, the insured can settle without waiting for an actual suit.  67 A.3d 961, 993, 994 n.48 (Conn. 2013) (emphasis added).  As discussed above, Argenis and Munoz have failed to adequately plead such a disclaimer.